We'll hear argument next this morning, Case 23-1259, BLOM Bank v. Michal Honickman. Mr. McKinley. Mr. Chief Justice, and may it please the Court, this Court has long held that Rule 60b-6 requires extraordinary circumstances to reopen a final judgment, and those circumstances cannot be the result of the movement's own strategic choices. The Second Circuit has diluted that stringent standard. In its view, courts must also give effect to Rule 15a's liberal repleting policy when considering a 60b-6 motion seeking to replete. That outlier view is wrong. It has no basis in law or logic. Rather than blurring the two rules, the proper approach is to keep them separate. If this Court's well-settled test for 60b-6 is met, then Rule 15 comes into play. Collapsing the two steps undermines finality. It creates an inherently contradictory test. It invites inefficient, repetitive, and costly litigation that is at odds with the federal rule's overriding objectives. Here, respondents do not qualify for Rule 60b-6 relief. They declined multiple opportunities to amend their complaint in both the trial court and on appeal. Instead, they made the choice to stand on their pleadings, even when the Second Circuit ordered supplemental briefing after the Kaplan decision. As a result, they received a final judgment that was affirmed on appeal. Now they seek to restart that process all over again. Doing so would effectively treat the Second Circuit's original decision as an advisory opinion, and respondents have offered no justification other than that they mistakenly believed that their original complaint was That hardly qualifies as extraordinary circumstances. It is litigator's remorse, and that is not enough for Rule 60b-6 relief. This Court should reverse and bring this case to an end. I welcome the Court's questions. Respondent seems to have premised its argument on its view of the earlier Second Circuit opinion that it announced a new rule. What do you think of that? That's not true, Your Honor. There's no change in law here. Instead, I would point you to my friend's brief on page 12, where they admit that it was just the application of controlling law to their set of facts. I would also mention, Your Honor, that what happened in this case is this case and Kaplan were decided in close proximity to each other, both in the District Court and in the Second Circuit. When we went to oral argument in the Second Circuit in this case, Kaplan had argued. I would point you to page 300 of the JA, where the Court in our case said to my friend on the other side, you're aware that Kaplan is sub judice before this Court. You're also aware, I believe, that the detailed allegations in Kaplan are quite different than what are at issue here in Honickman. What are we to do? What the Court ended up doing is holding Honickman in abeyance until Kaplan was decided. At that point, my friend on the other side was fully aware that at least one Court thought that their allegations were lacking as compared to Kaplan. The Court ordered supplemental briefing. At that time, they were fully capable, and they admit this on page 40 of their brief, of asking the Court to simply remand for them to replete if the Court thought that their pleadings in this case weren't sufficient under the rule that was announced in Kaplan. In fact, that's what happened in the last ATA JASTA case that was in front of this Court. This Court might remember that in the Twitter case, it also had a companion case called Gonzalez versus Google. And at oral argument in the Google case, Justice Barrett asked the plaintiff's attorney, if we were to rule against your client in the Twitter case, what would you want us to do in this case? And the attorney in that case said, we would ask you to remand so that we could attempt to replete. The Court ended up doing that in the Google case. It, of course, pointed out that even in that case, the plaintiff had possibly waived their ability to amend because they sought review rather than amending when the Court gave them the opportunity to. But that shows that they could have done that in this case. There was no controlling law. It was a mere application. If they had wanted another opportunity in the most efficient way that would have made sense, they could have done exactly what the attorney in Google did. And not only could they have done that at oral argument, when Judge Wesley at page 300 of the JA pointed out that their pleadings came nowhere close to Kaplan, they had a brief that they could have filed in the case, that they did file, where they didn't ask to replete. Instead, they said exactly what they said in the district court, which is, we're happy to go forward on our pleadings. Please render a judgment in our case. Having done that, that is their tactical choice under Ackerman and a number of other cases from this Court, it's clearly not enough to come in and say under rule 60B6, oops, I made a mistake, I want a chance to replete now. That makes sense with the structure of the rules. In Liljeburg and a number of other cases, including Crosby, this Court said, the reason you can't have a mistake or excusable neglect or some inadvertence that justifies 60B6 relief is because all of those things are available under B1, and B1 has a very strict one-year limitations period. Counsel, you're addressing a question that wasn't the question presented. The question presented was, does 15B get folded into 60B, the way the Second Circuit said? And the answer to that, you're asking us to say is no. But in answering Justice Thomas, you want us to go a step further and actually look at the facts here and say there weren't extraordinary circumstances, correct? I'd say a few things on that, Your Honor. So in our petition and in the merits papers here, we fully raised the merits question of whether or not they're entitled to relief. I'd point you to page 13 and 26 of our cert papers. But that wasn't addressed below. The Court below did not say whether or not it thought 60B was met. I actually disagree with that, Your Honor. So certainly, starting in the District Court, what the District Court did was it correctly said, and this is consistent. I know what it did. It did what you think is right. It applied 60B. Correct. When it got to the Second Circuit, the Second Circuit says you apply 60B by looking at 15B, correct? That's correct. And what you're saying is no, they shouldn't have. Did they look at this without the 15B lens? Did the Second Circuit look at it? So that's how it was presented and argued in the Second Circuit because Mandala had not yet been decided. So it was fully aired in the Second Circuit. When the Second Circuit rendered its decision in this case, the only error that it pointed out was what it perceived to be the legal error of not considering 15A. And I want to point you to there's a footnote in the Second Circuit's decision that I think is quite telling on this. The Second Circuit couldn't even bring itself to say there was an abuse of discretion here. What the Second Circuit said is, we're not saying there's an abuse of discretion. We're saying that the district court exceeded its discretion solely because it made this legal error. And I think that's because the Second Circuit realized there's nothing that remotely approaches extraordinary circumstances here. Mr. McKinley, I'd like to point you in a little different direction. Sure. So I understand your argument that 60B doesn't require consideration of Rule 15. Does it preclude it? I mean, could a district court in its discretion take into account possible need or leave to amend might be appropriate? I mean, 60B-6 says something like, any other reason that justifies relief. And you can imagine a district court who perhaps sui sponte, got a little fast out of the gate and dismissed a case with prejudice, 30 days passes, 59 is out the door. Plaintiff comes in and says, I've got a good amended complaint here. Couldn't a district court in its discretion take into account policies of 15 in those circumstances? So a few answers on that, Your Honor. How about pick your best one? Okay. So my best one is no, if it's under 60B-6. Because what 60B-6 says is that it has to be something other than what's available under the other subsections of 60B. The hypothetical that you posit there seems to me like maybe there's an argument under B-1. Maybe there's an argument that somebody made a mistake, there was inadvertence, there was surprise. If that's brought within the one-year limitation for B-1, then it might be available. And I think that's what you see in these 59E cases under Fomen, is that the court is saying very close in time before there's been an appeal. In 59E, of course, the court points out in Bannister, what happens is the judgment is actually suspended for a period of time. And so it's entirely appropriate in that and efficient in that circumstance to say, okay, if somebody thinks there's been a mistake, we'll consider that. We might give opportunity to replead there. I do think you still have to satisfy the actual standard. This court in Watzig last week dealt with a 60B issue where there was also a motion to vacate an arbitral ward. And at pages 5 and 6 of the slip-up, the court makes it very clear that you don't blend the two analyses. Instead, you take 60B straight on there. I think it was a mixed B-1 and B-6 motion. And so you decide whether 60B relief is warranted. If so, then you can start looking at liberal repleading. But Mr. McKinley, I guess what I'm a little worried about is this notion of whether or not parties are being punished for exercising their right to appeal if we accept the rule that you are positing. And the way it comes up for me, and I understand the facts of this particular case, but I'm just thinking about the normal, ordinary case in which a district court dismisses a complaint for insufficient pleading. And I guess at that point, the plaintiff has a choice, especially if the district court gives them leave to amend or says, hey, you can amend before I dismiss your complaint. You could follow the district court's recommendation and amend your complaint, or you can choose to appeal. You can say, no, I actually think my complaint is sufficient, and I would like a court of appeals to weigh in on that. What I worry about is if the district court enters their judgment, with or without prejudice, I guess I'm not sure it matters, but if they enter a judgment, they dismiss the appeal, excuse me, they dismiss the complaint, you exercise your right to appeal, and you lose, the court of appeals disagrees with you, says the district court was correct, I hear you saying that this particular party should not necessarily have a chance to amend, to cure, because they chose to appeal. And I'm worried about that. So it's not quite what I'm saying. I think what I'm actually trying to say might assuage your concerns. Because what I'm saying is, what a party can't do is say, I want to stand on my pleadings no matter what, whatever the decision is, and then file rule 60B-6. Why not? What they're saying is, I disagree with you, district court, that my pleading is insufficient, and I have a right to go to the court of appeals to have them weigh in. Once the court of appeals weighs in, then obviously they can do whatever is necessary to cure, I think. And I'm worried that you're saying they can't. No, what I'm saying is, if they think there's some ambiguity as to whether or not the facts that they've alleged meet the standard that they think is the correct one, then they have two options. They can replete whatever facts they think might clearly meet that standard, that's the most efficient course. But the other option they have is exactly what happened in this court in Google versus Gonzalez, where they can say, we think the law is such, and we think our facts meet that. But if you disagree with us on whether our facts meet that law, then please give us a chance to go back and replete. The efficient way to do that is the court then says, okay, fine, I'm going to decide the case. I don't understand why that's not basically the same thing. They just don't have that second request. What they want to do is come back after we've cleared up what the standards are and amend their complaint. No, the difference is there's a final judgment at that point. And the court is always recognizing rule 60 B six makes it very clear that a final judgment changes things. And once there's a final judgment, then you have to satisfy one of your, your, I guess what I'm, what I'm, it's a final judgment only in so far as the district court at the beginning, when it issues, the judgment understands that this is about pleading. Most district courts say, I, you know, you're going to have leave to amend this complaint. It's not final in the sense of you, you forfeit your ability to bring this claim. And, and I guess what I'm worried about is that you are making the ability to bring the claim contingent on whether or not you pursue your right to appeal. You're saying it's okay to amend if you don't appeal, but if you appeal and you lose, you're not going to be able to amend anymore. And I think that burdens the right to appeal in a way that is not exactly this, the way these rules should be read. Yeah. I respectfully, I disagree. And because, you know, I think what, what we're really saying is when you have opportunities to ask, you have to ask at a bare minimum to satisfy 60 B six. Remember what happened in Crosby, where this court said, even an actual change in law that changed the statute of limitations that opened the window for the, for the petitioner there to take advantage of the statute limitations, the court said no 60 B six relief, because you could have asked a court to overrule the Artus decision and you didn't, you could have filed a cert petition at this court, which of course is always discretionary for the court to grant it. But that was the basis on which the court said no extraordinary circumstances. So I don't think we're burdening the right to appeal. Instead, what we're doing is saying that a party doesn't get it, get an opportunity to address rehearsal where they can say, we're going to plead the bare minimum set of facts that we think can satisfy the law as we see it. Take it all, take a defendant all the way through motion to dismiss or summary judgment or trial or whatever it might be, go up to the court of appeals, tell the court of appeals, we want it to decide the question on the set of facts that we've pledged. But doesn't it matter if it's just the motion to dismiss? If the judgment comes after the motion to dismiss, we haven't had full litigation of the claim. We're in a situation in which really the core dispute is over whether or not they have pled sufficient facts to meet whatever standard it is. And the court of appeals says, no, you haven't. It's weird to me that after a ruling of a court of appeals saying your pleading is insufficient, the party goes back to the district court to say, okay, we have this ruling now, we're ready to amend. I don't understand why they forfeit their claims ultimately in that situation. I apologize, Your Honor. Because they haven't diligently pursued it in the forum where they could have, which is the court of appeals. They can say to the court of appeals, here's what we think the rule is. Here, we think our facts satisfy the rule. In this case, they had supplemental briefing that allowed them to do it. I'd also point out the same counsel in Kaplan as in this case. In Kaplan, they ended up surviving a motion to dismiss because they pled facts that survived it. So the notion that they had no clue how to plead some set of facts that could satisfy the standard they were advocating is just fanciful. But also, there's no suggestion here that the facts that they claim that they want to now inject into the case weren't available to them. And so allowing them to do it now not only puts 60B6 at odds with B1, but it puts it at odds with B2. What B2 says is that you can, within a year, seek to reopen for facts that were not previously available to you despite diligent efforts. Here, they admit the facts were available to them. They admit that they didn't plead them. They didn't raise them to the Second Circuit when they had a chance to do it after Kaplan. And so I just don't think that they can then come in and say, how could we have known? Now we need the extraordinary medicine of 60B6 relief. And, you know... Mr. McGinley, can I just make this more abstract, take it out of the facts of this and go back to the question that Justice Gorsuch asked, which I understood to be something like the following. Look, get your principal argument that Rule 60 is Rule 60 and Rule 15 is Rule 15, and there's not like some strange combination in the way that the Second Circuit thought here. But, you know, does, is Rule 60B6 flexible enough so that a court can, in appropriate circumstances, and maybe this case is not one of those, but I really want to think about this in the abstract, in appropriate circumstances, take into account matters relating to amendment, like whether the party has had a sufficient opportunity to amend. And I understood you to say to Justice Gorsuch, well, they couldn't do it in a way that evades 60B1 or other of the year-long provisions. And that seems totally right, black letter law. But if we put that aside, say that this isn't something that falls neatly into another 60B provision, why is it that, that you're, you seem to be saying you can't even think about amendment in the 60B6 inquiry. And that seems wrong the other way. Like what, why not think, it's a high bar, extraordinary circumstances, but there's also a lot of latitude in what you can consider, or so I thought. And that latitude maybe should include things relating to amendments in appropriate cases. So yeah, and I don't want to overstate our position because, because I, I don't think it's quite that you can never consider the fact that it's a 60B6 in order to amend. What the court has said is that the extraordinary circumstances that are required must match the thing that you're trying to do. And so if somebody comes in and says, I want to amend, and I want to have that opportunity through 60B6, they have to show extraordinary circumstances that justify that desire to amend. You don't let liberality bleed into the analysis because that's just not appropriate at that stage. But what you could say, and this may sound like an extreme example, but it comes from the facts of the first case to ever apply 60B6. Imagine a circumstance like ClapRot. What happened in ClapRot, which was decided one year I believe after 60B6 was adopted, is that the petitioner in that case was someone who had his citizenship rights stripped through a default judgment during a period of time in which the U.S. government, who was his adversary in the default judgment case, was detaining him, and he was ill. And the court said that's enough for extraordinary circumstances. So you could imagine a scenario where somebody files a case. There's a motion to dismiss filed. Maybe they even oppose that motion to dismiss. They go abroad. They fall ill. They never find out that the court has granted the motion to dismiss, but granted them leave to replead. They don't do anything in time. The court enters a default judgment that becomes final. Maybe in that set of circumstances, the person could come in and say, I had no idea that this was entered against me. You gave me the opportunity to replead. I had no ability to take advantage of it the same way that Mr. ClapRot had no ability to oppose the circumstances or the default judgment in his case. There, I would say, I think that may be appropriate under 60B6. So you're not saying that a court has to blind itself to anything remotely relating to amendments? No. You're saying the 60P standard, the extraordinary circumstances, is the right standard to use. And of course, you can't try to evade 60B1, et cetera. But there's no greater requirement or strictures that you're asking. No. All we're asking you to do is apply 60B6 as you do in every other circumstance. That always takes into account what the request is for. I appreciate that acknowledgement in Justice Kagan's question, because I do think it's one thing to say the district court abuses its discretion in 60B6 by not looking at Rule 15, and quite another to say the district court abuses its discretion to look at Rule 15 in some 60B6 cases. Right. I just want to be clear that I'm not now overselling in the other direction. Oh, I think you were selling really well just a moment ago. I might leave it. Yeah. Okay. That's fine, Your Honor. Well, what were you going to say? I was just going to say that we want to be absolutely clear. That doesn't mean liberality creeps into the equation. All it means is that the extraordinary circumstances that are cited must match the request. Yeah. Some extraordinary circumstances in which somebody was denied the right to replead, and at that point, one might take a look at our general presumption, you can call it Rule 15, you can call it whatever, that somebody should have their day in court. And a fair opportunity to do so. No? I want to be careful because I just, I think that They're blameless. They meet all the 60B standards. If they're blameless, it's truly extraordinary circumstances. That, of course, means that they didn't waive opportunities, that they were diligent in their pursuit. I don't know what the liberality would add to the equation at that point. I think that 60B6 just gives them the opportunity to do what they want to do. But if a district court cited Rule 15 in a 60B6 order, that would not be an abuse of discretion, would it? No. If all they did was cite it, no. If there's evidence that they let the liberality creep in in a way that changed the analysis that they were applying, then yes. I understand that. But no, if all they did was cite it, I also would say that I think that a district court could say, if they thought it was more efficient, they could say, I don't think there's any chance that you could possibly meet Rule 15's standards, so I'm going to deny this because no extraordinary circumstances, it would be futile. I think that's fine for them to do that. What they can't do is grant it by diluting. I appreciate that. So is one way to say what you're saying, that when you're in 60B land with a 60B motion, the standard is always extraordinary circumstances, not the liberality under Rule 15, and just say no more? For 60B6? Yes. Yes, that's correct. And then, of course, we believe that it's fully briefed here as to whether or not they meet it. I wanted to say one more thing. I think it was Justice Sotomayor asked why you should decide it. It's what you did in Crosby. There was not a separate QP on whether 60B6 relief should be granted or not. The court decided the EDPA issue, which was whether it's a second or successive petition, and then it said, but he can't meet 60B6 here because there's no extraordinary circumstances. He wasn't diligent in pursuing his effort to do what he wanted to do. That's precisely what has happened here, and we would ask the court to therefore reverse. Thank you, counsel. Anything further? I have a question. Yes. I guess what I'm still a little worried about is that you are characterizing the choice to appeal the district court's determination about the sufficiency of your pleading as a tactical waiver of your ability to amend if the court of appeals disagrees with you. And I'm worried about that. So let me give you a hypo. So you have a plaintiff who files a complaint that he thinks is sufficient. The district court signals, no, I actually think it's not. The law is such, and you haven't pled enough facts, but I'll give you the ability to amend. And the plaintiff says, no, with respect, your honor, I really do think it's sufficient. I have a right to appeal your ruling. If you'd like to rule that my complaint is dismissed, do so, and we'll go to the court of appeals to get a ruling on that. They go to the court of appeals, and the court of appeals agrees with the district court. What I don't understand is a rule, whether it's rule 60B or 15 or whatever, that prevents, under those circumstances, the plaintiff from curing by pleading the facts that he originally thought and mistakenly thought were not necessary. I don't know why he forfeits then the opportunity to proceed with this litigation having gotten now a clear ruling from the court of appeals about what is required. So I'd say in that circumstance where there's never a request to replete either in the trial court or in the court of appeals, I think that's Ackerman, which says that if you make a tactical decision to induce the court to do something or you make a tactical decision not to do something. But why is the tactical decision choosing to appeal the district court's ruling? That's my question. No, no, it's choosing not to plead the facts that you think might have satisfied even the rule that you're advocating. That's what happened here. I would also point out here, and I point you to JA 171 through 185, we raised all of the issues that they say that they know. I don't want this case. I'm just trying to understand. Can I just change the hypo a little bit? What if the court of appeals actually partially agrees with the plaintiff and changes and says, neither of you is right. The district court said you needed to do a whole lot more. We don't think that's the case. You only need to some subset of facts. In that situation, does the plaintiff get to go back and do what the court of appeals says is now required? They can ask to do so. They admit this on page 40, I believe, of their brief, that they could have asked the second circuit to do that. That's what happened in the Google case. It's what happened in the Schwab case that they cited. But if they don't, you're saying they can't go to the district court and ask? Not on a 60B6. Now, I mean, the other thing they could have done here, and I'm not just trying to make this about this case, I'm saying a plaintiff, even in the circumstances that you're positing, say they mistakenly think that they can meet even the standard that the second circuit or the court of appeals is advocating, but the court rules against them. They could file a rehearing motion and they could say, your honors, we're sorry. We should have asked you at the outset, but we're asking you now. We think there might be facts that could replete. Obviously, they're going to have to labor under the rehearing standard at that point, but that's still better than a 60B6, which is an attack on a final judgment that's already been affirmed on appeal. Thank you. Thank you. Thank you. Mr. Rating. Mr. Chief Justice, and may it please the court. The answer to the question presented is that Rule 60B6's standard does apply here, and the circumstances of this case clearly meet that standard. The plaintiffs here did everything you'd want litigants to do. They didn't waste the district court's time with futile amendments given the district court's erroneous standards. They appealed an incorrect decision, secured a corrected pleading standard and substantive legal standards from the circuit, and then armed with those clarifications, promptly sought an opportunity to amend from the court tasked with making those decisions, the district court. The circuit acknowledged that plaintiffs faced an impossible situation, including the district court's soup-to-nuts incorrect standards from every one of the relevant JASTA standards to the direct evidence knowledge pleading standard, which most plaintiffs could not hope to meet. And it acknowledged that the district court was confused given ambiguous circuit law on JASTA. It's fundamentally unfair to lay the consequences of that confusion at plaintiff's doorstep. But when presented with a new indicator, the district court exalted finality without balancing that principle against the federal rule's preference for deciding cases on their merits, a preference which is at its peak at the initial stages of litigation where discovery has not even begun. The circuit recognized that the fair thing to do was to give plaintiffs a chance to meet the corrected standards in a first amended complaint. The panel then issued the summary order below, which included the author of the prior affirmance and other grounds, effectively undoing that affirmance and attempting to clean up a very strange and unfair situation. That's why petitioner is forced to manufacture waivers by plaintiffs that the circuit simply never found. Like many cases involving extraordinary circumstances under Rule 60B-6, crafting universal rule from unusual facts of this case is very difficult. But we know Rule 60B-6 makes an exception to finality intended for unusual cases like this one. I welcome the court's questions. Wouldn't you be in a stronger position had you taken up the district court's offer to amend your complaint? The offer from the district court was to meet the standards urged by defendant, which were entirely incorrect. And as of oral argument, included the Kaplan 1 standard for pleading knowledge that the defendant read or was aware of the sources cited to convey knowledge. That's something that we couldn't allege, much less need to. Even if you look at the first opinion by the court of appeals, didn't it affirm the district court? On other grounds, Your Honor. But the point was that your complaint as it stood did not even meet that standard, even if it wasn't the correct standard. It didn't meet the clarified standard that the circuit court provided. The circuit court provided a standard that in what Judge Wesley called a law that was recasting itself in an ambiguous and evolving legal situation that gave us, among other things, a new knowledge pleading standard, as near as we can tell. This is the public sources available evidence distinction. And it identified specific and I'd add nonintuitive defects in the complaint. Defects that we can remedy, but not defects that necessarily should have been obvious to us before. The other side says that once you have an affirmance of the dismissal, though, that you should have sought rehearing, asked the second circuit to modify the decision to remand and to permit you all to amend the complaint. Why didn't you do that? And why isn't that the answer? There's no obligation to do that. In fact, in the second circuit, there's not only no obligation, but it appears to be a regular enough practice to go back to the district court. So, for example, in the Mandala en banc dissent, four of the judges of that court encouraged the plaintiffs to go back to the district court and seek vacator under rule 60B6 and amendment. The same thing we did here. The ninth circuit, in New Yen v. United States, relying on this court's decision in Rogers v. Hill, said that so long as the mandate from the circuit doesn't say you can't amend, then you are free to go back and ask the district court for leave to do so under rule 60. And then the tenth circuit also commented to this in Pierce v. Cook, telling the district court, I understand you might have been unsure. If you could grant that relief, you can't. Mr. Radin, if I understood your introduction, you said the right standard is the 60B6, extraordinary circumstances, and here it's met. That's not what the second circuit said, is it? The summary order below I don't think is a picture of clarity. Well, it's kind of clear. It just doesn't say what you say it says. It says the district court erred because, and I'm quoting here, it evaluated plaintiff's motion under only rule 60B standard. And then it says what was it required to do instead? It was, and I'm quoting again, required to consider rule 60B finality and rule 15A liberality in tandem. So that's to say it's not just the rule 60B standard where the plaintiff comes in and says it wants to amend, you know, that there's some kind of mishmash of a standard, which is part 60B and part 15A. And as I understood your introduction, you have given up on that. And, I mean, we seem to have a lot of people giving up on things, properly so, because we seem to have a lot of outlier positions today. And if it's an outlier position, why don't we just say the outlier position is wrong, go back and try it again? Well, I think all that the circuit meant about considering the rules in tandem was balancing finality against rule 15's preference for hearing cases on their merits. The, I don't think that's contrary to rule 60. Rule 60B doesn't have the word finality in it. It doesn't have the word extraordinary circumstances in it. Well, it says, and this goes back to Justice Gorsuch's question to Mr. McKinley, I mean, it says you are required to consider what 15B tells you about amendments. And you're, and, and, and, you know, that provision, it really does set forth a standard, which is like 60B6, high bar, 15B, low bar, put them together, medium bar. That's, that's different from what even you are saying is the right way to look at this. Yeah, I think that rule 15 here helps illustrate what might be extraordinary as in denying the opportunity to amend. I think that rule 15A also gives us some insight at the importance of the stage this happens at. At an early stage, amendment is freely given. We're not asking for amendment to be freely given here, simply saying it reflects an understanding that the court should be more permissive at the early stages of litigation. But ultimately, those are all built in to rule 60, as this court. So if they're all built in, Mr. Radin, what objection would you have to a short opinion from this court saying simply that the rule 60B standard applies, there isn't this mishmash, as Justice Kagan, I think, referred to it, between 15 and 60, go back and try again, because I hear most of your arguments saying we can meet 60B. Yes, I think this court could issue a ruling saying that 60B governs. Rule 15 is not governing here. But if I can help the opinion. Well, how about putting a period there? Sure, I think so. I mean, I think that as this court held in Wadesig just the other day, that rule 60 balances finality in the interest of justice. It's already in there. It's already in there. Okay, thank you. Can I have you speak to the genesis of the extraordinary circumstances? I mean, that language doesn't appear in A6. Any other reason that justifies relief says the actual provision. So I know we came up with it, I think. Can you just talk about that a little bit? Yes. As my friend mentioned, it's from the case Claprot, where a plaintiff essentially misses a summons because he's in jail and ill. And the reason why the court identified the extraordinary nature of that was to point out the lack of fault. So it was extraordinary in that he wasn't just sitting around ignoring a court order. There was a lack of fault issue. It's not, to be clear, the extraordinary circumstances test is not a frequency test. It's not that, oh, this is very, very rare. I don't think being sick or akin to, you say, lack of fault. Now, counsel on the other side kind of points the finger at you all and says, in this case, you were at fault. So why is he wrong about that? Well, the two invitations we get from the district court are, as Judge Wesley said, impossible for us to meet. They're premised on incorrect standards. The correct thing to do there is to appeal. Rule 60, for example, is not a substitution for appeal. We, moreover, I think it's, it would be needless to go back to the district court and say, oh, I think you made a mistake and got every single thing wrong. The thing to do in that situation is to appeal. When we get to the circuit, why didn't we ask the circuit to amend? Naturally, we think we're right. We don't think we're, but we have to meet some standard that we're advocating for. And indeed, where we fall down in the Second Circuit is in what appears to be a new knowledge pleading standard. But also, it's not the Second Circuit's job to grant us leave. Was there an opportunity for you to, as Justice Kavanaugh pointed out, ask the circuit even after they clarified? I mean, I know that there's a, there's a point at which you come to the circuit and you could have said, or in the alternative, you know, let us amend to begin with. But then once the Second Circuit clarified, okay, so this is the standard. Was that the moment at which you were supposed to ask about? We could have petitioned for a panel rehearing, but as I mentioned, it seemed to be the practice in the circuit to take that back to the district court. And I don't see that there's any rule that suggests that we should be essentially punished for making a reasonable choice of who to bring that issue to. I think Mr. McGinley would probably object to that on the grounds that we have a final judgment. You know, he didn't ask the circuit for leave. Now, I'm not sure we need to get into any of this for reasons we've already discussed, but if we were to, not having asked the circuit for any further relief beyond we win or we lose, why wouldn't that normally be the end of the case? Well, I think, first of all, I think that just to note that in any appeal where you think the standards are wrong, I suppose it's implicit that the appellant... You have a final judgment in the district court on appeal, yes or no, not asking for further proceedings, court says no, that's usually it, right? I think it's the second circuit practice as expressed in Mandala to take that back to the district court. It certainly was something we reasonably relied on as an understanding of how the second circuit operates. If the court were to, this court were to make a rule... I understand you think that's how, I'm just struggling to understand how that might operate given you have a final judgment that's been affirmed. This is the first of rule 60B. Oh, that's different. I'm asking about the absence of leave to amend being requested in the appeal. The appeal's over. It's done. Case closed. Right. The only time, the way to, right. It's closed. We didn't ask for an amendment because we didn't think we needed one. Why would... I appreciate the circumstances here might lead to a 60B, but I think that would be the recourse, right? I mean, it's, you didn't... Oh, to ask the panel? Yeah, otherwise you're stuck with 60B, right? Yes, but I don't, but 60B, I don't think is quite the mountain that my friend... I appreciate that. I appreciate that. So, speaking of mountain, let me just ask you a follow-up question about that, which goes to some of your responses to Justice Jackson. Do you think the extraordinary circumstances test is right, but maybe it's just a lower mountain? Yes, Your Honor. Lower altitude? A lower altitude mountain. Yes. Okay. Well, our precedent hasn't treated it that way, and pretty much the uniform practice in the Court of Appeals, so far as I'm aware, is to say extraordinary circumstances really are extraordinary because we do have a preference in favor of letting final judgments be final. Yes, Your Honor, but the extraordinary circumstances show up more often than just someone being ill and in jail. I think they happen here where a plaintiff has not had an opportunity to amend his or her complaint even once on the actual defects identified in that case. As my friend mentioned, you know, it's not so extraordinary to have the law change over time. That's true. But when it happens in that case, and then the same circuit essentially takes back the affirmance in the summary order, as they did here. So is your argument then that if you went back to the Second Circuit, you would be able to satisfy the extraordinary circumstances test? You don't really need the liberality standard from Rule 15? I think it's built in to Rule 60, which, as this Court says, balances finality against the interest of justice. So you're not giving up that Rule 15's liberality standard is peppered in in this circumstance? I think, like this Court said in Krupski, I think that it, along with the rest of the federal rules, helps express a preference for trying cases on their preferences. Whether this Court says that you get there by invoking the words Rule 15 or not, I don't think changes that analysis. Are you arguing that you were misled in some respects? Maybe misled is a little strong, but by the Second Circuit's practice? Well, I think that the normal case for a circuit in its position would be to remand. So on its own. We see this in Maranzano, for example. The D.C. Circuit says, nobody's right here, go back and try again. And I think that's what the Circuit should have done here. But once they affirm, you said you didn't ask for rehearing because you thought, maybe fill in the blank there, you thought? That that is a decision for the District Court in the first instance, which the Circuit agreed with. When we went back on the summary order below, the Circuit doesn't say, I don't know why you bothered the District Court with that. You should have come to us. The Circuit, which is in charge of its own docket and rules and so on, said, you're right, you should probably get another crack at that. Or at least the District Court should think further about it. And in Mandala, that's what? That's what four judges of the Court of Appeals said. You should go back to the District Court, so. That's right. So the answer, I think, is you feel like you were a bit misled by the practice. If that were to be impermissible, then yes. I think we were following the Circuit instructions as shown in the summary order itself. Under B4 and 5, the circumstances are such that allowing the judgment to stand would arguably work a really serious injustice. The judgment is void. The judgment has been satisfied, et cetera. So do you think it would be fair to infer that the reason under 6 has to be of comparable magnitude? Well, no, because if it were, then why not just be of comparable magnitude of 1? Well, because 1 has the one-year limitation. I see. I think that what 6 is appreciating is that cases can be strange and unusual, to quote Judge Wesley, unusual and quirky as they were here. I don't think that it means that it still has a reasonable time limitation, for example. Courts have rejected this sort of relief in shorter periods of time because the plaintiff didn't jump to seek the amendment. We did. In 11 days, we were back before the District Court. Well, I thought you said that extraordinary doesn't mean infrequent. And then you said, well, it could be extraordinary if it's quirky. So what is the difference? Well, I just mean that it's hard to fashion a rule about situations like this. It's hard to say that extraordinary circumstances are met when you were given incorrect standards, and you appealed it, and you were largely vindicated, but then the circuit adopted a new knowledge standard and identified some defects, and you promptly went back, but they had affirmed. They undid the affirmation, essentially. It's, to me, a textbook situation for the circuit monitoring its own cases. Mr. McGinley says that you should have at least pled the facts that you thought, you know, under these other hypothetical or potential standards. Like, why didn't you do that? Well, we did, under the standards that we understood to be the case. The allegations we pled were similar to allegations that had survived motions to dismiss in other cases, like Weiss, as we point out in our brief. The circuit court's distinction, for example, about publicly available evidence versus public sources, that was not just new. I read it as, in fact, contrary to their Nomura decision that says publicly available information is sufficient to show circumstantial knowledge. Or take the cash as untraceable. The circuit said we had to specifically plead that cash was untraceable. We didn't think that that was necessary. We thought that was an inherent part of cash. But fine. We can amend to meet that. I think what we don't want is a rule where plaintiffs have to load up dockets with amended complaints, trying every which combination of facts. For example, what if the circuit had said, you know, you say that Hamas operates openly in Lebanon. How do you know? What are the ‑‑ how does Lebanon react historically to terrorist groups? We could have written 30 pages on that. We would lose short and statements if we have a rule that makes plaintiffs try to guess at every future ruling or lose their right to amend forever. I'm sorry. I understood here that you came in in your initial complaint and said basically they knew that these people were tied to Hamas. The people who were on their said that's not enough. Public information is not enough to give knowledge. But even if it was, this was their alternative reason, there's no reason to know that this information was in their possession at the time of the attack that occurred here for which you're seeking recompense. I understood when you went up to the Second Circuit, the Second Circuit agreed with you if that public information would be enough to give knowledge. But its alternative ground for affirming was, but the district court was right, none of the information was clearly present at the time the alleged aid to this attack occurred. So you could have cured that below on the first round. Nothing about that was a surprise either in the district court or the court of appeals. But you chose not to. Well, when the district court told us that we had to plead that Blum, or, you know, ask for statements from Blum or Blum employees that they had read or were aware of sources, I don't think there's any benefit to us saying, well, we don't have that, but here are just some more allegations that are going to fail to meet your standards. A frivolous amendment at that point. We had what we thought was sufficient. And if you look at the actual defects identified by the circuit, I think they're really quite narrow. For example, the cash one, or making clear at what time people knew that Shekhar Dawi was the chair of the union of good, which we took to be clear. Those are not inconsequential facts. Those are the very essence of the case. I, for example, in Weiss, a case with that said, it is reasonable to assume that a bank and banks have no your customer obligations and so on, that a bank would look to foreign designations of their customers or perhaps their counterparties. And that's why these really never said they had been identified at the time at issue. No, no, the, the complaint says that the union of good was designated by Israel in 2002 and that the counterparties, which were sending millions of dollars that Blom was converting into cash for these entities, were designated already by Israel. The AAF, the Al-Aqsa Foundation had been shuttered by Germany in its own headquarters in 2002 during the relevant period. HLF was a known Hamas financer that would soon get shut down during the relevant period, shut down at the beginning of the relevant period. And when that's shut down by the U.S., there's, the bank doesn't then say, you know, my goodness, I can't believe we've been receiving millions of dollars from this terrorist organization. What account is that going into? Who are these people? They just move right over to the next transferor, kind hearts, until that one's eventually shut down years later. Thank you, counsel. Thank you, counsel. I think my friend on the other side has all but conceded the rule 60B6 question and I think his very first line standing before you today invited you to rule on the merits of whether 60B6 relief is warranted here. I think everything he said shows that it's not, there are not extraordinary circumstances here. I want to point out something that didn't come up, I don't think in either side but it's really worth emphasizing. The denial of 60B6 is reviewed for abuse of discretion. And I think that's why this court can very easily cut through and reverse entirely in this case because there's no abuse of discretion here whatsoever. Even if my friend is right that they mistakenly thought that they didn't need to plead the facts that turned out to be necessary under the very standard that they claimed that they were advocating, that's at most a mistake. It's just simply not true that they had no notice that those defects existed before the district court issued her decision. On pages 171 to 185 of the JA, this is our motion to dismiss. This is before the district court has issued any ruling. We point out every single defect that the second circuit ended up affirming based on and I think if you look at that and you match it up to pages 49 through 52 of the JA, you'll see that everything the second circuit said was a problem, we said at that point they had the opportunity to amend. I also would say that the notion that somehow their case is the one that changed the law is fanciful not only because there's no change of law but really what they're saying is Kaplan was some kind of new decision that they needed a chance to address. They had a chance to address it. That was the entire point of the supplemental briefing. At page 300 of the JA, Judge Wesley said to them, same counsel as in Kaplan, he said, you recognize that your facts pled here are nowhere close to what's in Kaplan. We agree they're nowhere close to what's pled in Kaplan. Even the proposed amended complaint is nowhere close to Kaplan. As my friend's own argument shows today, all of the allegations they want to make are about non-customers. Not about Blom's customers but about third parties. And I would point you to footnote 20 in the second circuit's decision which points out that even if they fix the defects that they think the second circuit was talking about, they still lose because when all you're doing is talking about non-customers with nothing more, that's not enough to plead general awareness. I'd also point out just to make you feel a little more comfortable, I think that we also won on substantial assistance in the district court. The second circuit didn't address it because it affirmed on general awareness. I think if you look at what was alleged, even in the proposed amended complaint, it's nowhere close to what this court required in Twitter. The problem with their case is that it simply does not meet the standards for JASTA. And we won dismissal. The case was filed in 2019. It's about events that occurred 25 years ago. We won dismissal in 2021. We won affirmance in 2022. And somehow we're here three years later talking about a zombie case that should have been over years ago. They simply do not meet 60B6 and we would ask the court to reverse and render judgment in our favor. Thank you. Thank you, counsel. The case is submitted.